## MARCH TERM, 1867.

### DEMAREST, appellant, and TERHUNE, respondent.*

1. If a debtor, in failing circumstances, convey his lands for a consideration apparently inadequate, to a creditor in payment of a debt due him, the burthen will be thrown on such creditor to show, by full proof, that such transaction was *bona fide.*

2. If the honesty of such conveyance be left in doubt, the sale will be set aside upon equitable terms.

3. Under the facts of this case, the conveyance was set aside, with directions that the land should be sold; the proceeds of such sale to be applied, in the first place, to pay the debt due to the creditor who held the conveyance, and after the payment of the costs of both parties, to the satisfaction of the judgment of the complainant.

The appellant in this court, being the complainant in the court below, was a creditor of Gilliam C. Terhune, and exhibited his bill to set aside a conveyance of certain lands, lying in the town of Hackensack, made by the said Gilliam and wife, to the respondent, Albert G. Terhune.

The gravamen of the bill is that this conveyance was for the nominal consideration, expressed in the deed, of $3000, and that it was worth at least $5000; that at the time of such conveyance, the said Gilliam, as was known to respondent, was indebted to the complainant; and the bill charges that the deed was voluntary and without consideration, and was made for the purpose of hindering and defeating the complainant in the collection of his debt, and to defraud him. Albert G. Terhune, in his answer, admits that he knew of the indebtedness above mentioned to the complainant, but denies that the deed to him was voluntary, or without consideration, or was in any way, directly or indirectly, made for the purpose of hindering or defeating the complainant, or any other creditor, &c.

The answer further stated that on the twentieth of No-

---

* CITED *in Jones* v. *Adams,* 8 *C. E. Gr.* 117.

vember, 1863, Gilliam C. Terhune was justly indebted to him in the sum of $2220, for money actually loaned and advanced by him, to the said Gilliam, before that time, and for which Gilliam give him a mortgage; that $1000 had been paid on that mortgage, that afterwards Gilliam became indebted to him in the further sum of $200, advanced by him for the support of his family; that said Gilliam had given a mortgage to Abraham Westervelt for $1000, which mortgage had been assigned to respondent, and upon which there was due, at the time of making said deed to him, the sum of $1194.64; that said lands were, at that time, subject to another mortgage, given by said Gilliam to Robert Campbell, for $500, and that there was due on said mortgage, at the time of giving said deed, the sum of $705.54; that further, said lands were subject to a judgment for $78, which he had to pay; that the whole of his claim, together with the said encumbrances and interest thereon, amounted to the sum of $3492.04, at the time of giving said deed, and that this made the consideration of said deed.

The case was heard by a master, sitting for the Chancellor, on the bill, answer, and proofs. The complainant's bill being dismissed on the merits, he brought this appeal.

The opinion of the master is reported *ante p.* 46.

*Mr. C. H. Voorhis,* for appellant.

*Mr. L. Zabriskie,* for respondent.

The opinion of the court was delivered by
THE CHIEF JUSTICE.

A careful examination of the evidence in this case, has led me to the conclusion that the premises in question were conveyed to the respondent for a consideration which was below their real value. There appear to be strong reasons to justify the belief that, at a fair sale, these lands would have brought more than enough to pay all the liabilities of the grantor who, as matters now stand, is an insolvent. The

respondent is the uncle of the grantor, and at the time of this transaction, was living in the same house with his wife and family. It is also shown that the debtor's personal property was under levy by execution, to an amount more than sufficient to exhaust it. The consideration alleged to have been given for the conveyance of the premises, was sundry debts said to be due to the respondent.

We are called upon, then, to deal in the first place with this conjuncture : A debtor having property which, at a fair valuation, is ample to satisfy all that he owes, transfers such property, by way of sale and payment, to one of his creditors; such creditor being a near relative.

No one, it is presumed, will deny that such a transaction is well calculated to excite suspicion and awaken vigilance. Its honesty is defensible only on the supposition that both vendor and vendee were ignorant of the value of the property transferred. The vendor, as against the just rights of creditors, could not give away his property, nor could any creditor, knowing the position of affairs, receive anything for which he did not give an equivalent. Such a conveyance can stand only on the ground of its entire *bona fides*, and the burthen of proof, in this respect, under such circumstances, is manifestly on the purchaser. The defence of the respondent is, that he took the property at what both he and the insolvent thought was a fair price ; and this, as the claim defeats the equities of the case, he must establish by plain proof. Has he done this ?

The price which the respondent in his answer says he and the debtor set upon the land, was $3000. This is $500 less than the valuation fixed by some of his own witnesses. The testimony on the part of the complainant places the value at from $4000 to $6000. It seems inexplicable, then, how the respondent and the debtor could, in sincerity, deem $3000 the full worth of the land. They were both well acquainted with it ; it had been the home of the debtor, and the respondent was living upon it at the time. It is true that the respondent in his answer avers that, in point of

fact, he agreed to pay $492.04 more than this for the premises. This increase he makes up by various items of indebtedness, which he enumerates. But the deed states the consideration at $3000. Why was this, if it was greater? It is said that this amount was inserted in the deed, because this was the valuation at which the parties rated the property. But this is obviously a mere gloss, the whole purpose of the consideration clause being to express what the grantee pays for the land, not what he or the grantor values it at. It is difficult, in view of this statement of the deed, to resist the belief that the sum inserted was regarded at the time as a matter of no moment, from a consideration which will be indicated in the sequel. The clause expressing the consideration contained in the conveyance, is in the handwriting of the counsel of the respondent, and it is evident from his testimony in this cause, that he was not aware that the sum thus specified was not the agreed price. It is also certainly a notable circumstance, that an attempt is made to depart from the consideration stated in the written document, when such departure has become necessary to give a color of fairness to the transaction. Nor are these additional items of indebtment, which are thus thrown in to swell the consideration, proved in a satisfactory manner. One of these items is described in the answer as the sum " of two hundred dollars, *or thereabouts,*" which the respondent alleges he had advanced and paid, in the absence of the debtor, for the support of his wife and family. The only evidence of the truth of this assertion is this short statement in the answer. The respondent does not pretend he ever had any voucher for this debt; he does not even say the amount was ever ascertained on any settlement between himself and the debtor. He cannot specify, even in his answer, the precise amount due. He annexes no time to such alleged advances. He says they were made for the support of the family, and yet he shows he made the agreement for the purchase of the property in the month of June, 1864, while he admits that he received, in that same month, $500 from the debtor, which he endorsed

as a payment on his mortgage.   Is it probable that he would have made this endorsement if this sum of $200 had been due to him for which he had no security?   There is also an evident error, to an extent exceeding $100, in the calculation of the amount of interest due on one of the mortgages, and yet this error enters into, and forms part of, the aggregate amount which is specified, and which, it is alleged, was the actual consideration agreed upon.   Such testimony as this is far too loose and indecisive to support an agreement which, in its results, is harsh and unjust.   Nothing short of a perfect demonstration of the fairness of every item in this account of the respondent, would in my judgment, suffice. But, independent of this consideration, the important fact is admitted, that the respondent and the debtor, at the time of making this conveyance, actually fixed the value of the property at $3000.   In view of this fact, I am unable to believe that when they did this, they were dealing at arms' length, as vendor and vendee.   It lacks the essential feature of a bargain and sale; the indication of a purpose, on the part of the seller, to obtain a fair equivalent for the thing transferred.   I think it is obvious the affair rested on some other basis.   And if anything were wanting to strengthen this belief, it would, in my opinion, be found in the curt and ambiguous statement of this alleged purchase, contained in the answer.   The answer itself affords the entire proof upon the point, and yet it nowhere avers, in direct or explicit terms, that the debtor agreed to let the respondent have this land in consideration of the moneys due to him.   But two clauses of the answer touch upon this subject.   The first states, that the debtor did "execute a deed to this defendant, conveying to him said lands in fee, for the consideration of $3000, therein expressed."   It is obvious this averment relates merely to the sum expressed in the instrument; otherwise it is false, for the respondent afterwards alleges that this amount was not the price agreed upon.   The other clause is in these words:   "And this defendant further answering says, that the only object of said deed to him was

to satisfy said sums so due to him, and that the said lands were not conveyed to him to defraud, &c., but that the same were taken by this defendant in payment of said debts to him," &c.   In this there is no allegation that the debtor agreed to let him have the property in consideration of the debts due to him.   He does say he took them in payment, but he fails to show any agreement to that effect.   Upon this important point I regard the answer, if not evasive, at least as incomplete.   This feature of the answer has a tendency to confirm the suspicions naturally incident to the respondent's case.   The defence, being a hard one, must rest on the ground of strict legal right ; it must be sustained, therefore, at all points, by the pleadings and evidence.   If the facts are left in doubt, a court of conscience will mould them in a form subservient to the equities involved.   This, it is apprehended, is the posture of the present case ; the respondent should not, therefore, be permitted to retain the entire property, to the exclusion of the rest of the creditors, on the ground of being a purchaser for value.

But although of this opinion, it does not seem to me that the facts are such as must lead necessarily to the conclusion that the conveyance, at the time it was executed, was tainted with actual fraud.   Such a judgment would be unnecessarily severe.   There is but a shade of difference, sometimes, between the act of taking a conveyance of property as security for the payment of a debt which approximates the value of such pledge, and taking it in payment of such debt; so that, subsequently, that shade of difference may, perhaps innocently, be lost sight of by the parties.   This, I think, has happened to this respondent.   Probably the arrangement by force of which he took his conveyance, was loose and ill-defined ; such is often the case ; but the fair presumption, from all the facts of the case I think, is, that the purpose of such conveyance was to enable him to raise the money due him, by a sale, without the expense or delay of a suit in equity on his mortgage.   This hypothesis is the most favorable one which can be raised up for the respondent, and may be, it seems to me,

fairly deduced from the proofs. I shall not handle details. The evidence of Mr. Banta, who was the counsel for the respondent and was called by him as a witness in this suit, has a strong bearing in support of the view suggested. His statement is, substantially, this: that the respondent brought him his mortgage to have it foreclosed, and that he told him if he could get the debtor " to convey the property to him, it would answer the same thing, and save the costs of the foreclosure." To this the respondent replied, that he would go and see the debtor, and try and make an arrangement with him. So, of a similar complexion, is the testimony of Mr. Paulison. This gentleman refers to a conversation with the respondent, which took place after the property had been advertised for sale by the respondent. He says, in that interview, " I asked him whether, if the property was sold, he was willing that the overplus, if any, after satisfying his own claims, should go to pay the other creditors of the doctor (the debtor); that is, *whether he meant that;* and he said, certainly. I then said, that ends it, or it ought to end it, or words to that effect."

And again, we find the same idea in the evidence of Mr. Echerson. Referring to a conversation with the respondent, his words are: " I asked him how it was that he was in possession of this property, and I had a claim against the doctor; I think he told me the doctor owed him, and that, in the first place, he got a mortgage, and afterwards he got a deed; he spoke of the mortgage not being satisfactory, and that the property was now his; he said he did not want anything more than his claim."

This evidence, then, shows conclusively that the respondent was desirous of obtaining the payment of his debt; that with that view he took his mortgage to his solicitor for foreclosure, who advised him that if he could get a conveyance, it would answer the same purpose, and would be attended with less expense; that the respondent said he would endeavor to do this; that he succeeded in getting a conveyance; and that he told one witness that he meant the surplus, after he should

be paid, to go to the other creditors; and that he stated to another, that all he wanted was his own money. In addition to this, it was further shown that, in point of fact, the respondent had no use for the property; that all he wanted was to make his money out of it, for he almost immediately advertised it for sale. From this series of facts, it seems to me to be plainly consistent with sound reason and good sense, to infer that the debtor executed the conveyance in question to his principal creditor, with an understanding, if not clearly expressed, at least tacit, that the latter would sell the property, and thus indemnify himself for the moneys due him.

Making then this deduction, I am brought to the result that the conveyance of these premises to the respondent was, to a partial extent, voluntary and without consideration. So far as the debt due to the respondent reaches, the conveyance was founded in value; beyond that, it had nothing to support it. As to this excess of the value of the land over the consideration to be given for it, the respondent should be held as a trustee for the creditors of the grantor. Plainly on this ground, therefore, the appellant is entitled to the aid of the court. Nor is the frame of the bill inapplicable to this aspect of the case. It proceeds upon the point of a conveyance, without consideration, and which was, on that account, a fraud upon creditors. The case laid, therefore, is partially proved; the conveyance, though not wholly, is in some degree voluntary, and is, thus far, constructively a fraud, delaying, and if not set aside or controlled, defeating creditors. I do not, consequently, find any difficulty, arising from the structure of these pleadings, in granting relief in the form above indicated. In the case of *Boyd* v. *Dunlap*, 1 *Johns. C. R.* 478, the bill, in its substance and general construction, was similar to the one under consideration, for it was founded on a complaint that a conveyance was voluntary, and was fraudulently made to defeat the complainant and other creditors. The evidence showed, as in the present instance, a partial, but not a full consideration; and Chancellor Kent concluded that there was sufficient ground for a

limited interference, by allowing the deed of the real estate to stand as a security only for such consideration as had been shown. In applying this principle, he makes these pertinent remarks: " There appears to be very considerable inadequacy of price, even admitting the consideration expressed in the deed, and to allow the deed to stand as security for the true sum due, would be doing justice to the parties, and granting a relief which cannot be afforded at law. A court of law can hold no middle course. The entire claim of each party must rest and be determined at law, on the single point as to the validity of the deed; but it is an ordinary case in this court, that a deed, though not absolutely void, yet, if obtained under unequitable circumstances, should stand only as the security for the sum really due. A deed, fraudulent in fact, is absolutely void, and is not permitted to stand as a security for any purpose of reimbursement or indemnity; but it is otherwise with a deed obtained under suspicious or unequitable circumstances, or which is only constructively fraudulent." The doctrine thus perspicuously expressed, is fully sustained by the cases cited; and it is manifest, such doctrine can never find a more appropriate application than to the facts now under consideration.

My conclusion is, that the appellant should have a decree in his favor in the court below, and that it should be referred to a master to ascertain the amount due to the respondent, and which sum should be declared a first lien on the said lands; and that said respondent, or a master in chancery, should be directed to sell said lands at public sale, and that the proceeds thereof should be applied to the payment of the said debt due to the respondent, with the interest thereon; and that, in the second place, out of the surplus, if any such there be, the taxed costs of both parties, as well in the court below as in this court, be paid; and in the third place, that the principal and interest due, or to grow due, on the judgment of the appellant, be paid.

Let the decree be reversed, and the case remitted with instructions in conformity with the above view.

The decree was reversed by the following vote:

*For reversal*—BEASLEY, C. J., BEDLE, CLEMENT, DAL-RIMPLE, DEPUE, ELMER, KENNEDY, VAIL, VREDENBURGH, WALES, WOODHULL. 11.

*For affirmance*—FORT.